This is 5090175 and 5090573, the Consolidated Platinum Consulting Solutions and Network Consulting Solutions v. Mayer. For the appellant, Elliot Wixor. Yes, sir. And for the appellee, Mr. Dollar. Mr. Wixor, you are ready, sir. I always want to pronounce people's name right because when you see mine spelled, nobody pronounces it right. Well, Judge, I've been called a lot, so I'm okay with people mispronouncing my name. Good morning, may it please the courts. My name is Elliot Wixor. On behalf of the defendant appellant, James Mayer, counsel, this comes out before the court's call for oral argument this morning on the two consolidated cases, as Your Honor has already mentioned. Just a very, very brief timeline because I think it's important just to refresh everyone's recollection as to what has occurred in this four-year piece of litigation. To begin with, these are two interlocutory orders that Mr. Mayer is appealing. The first order is a March 20, 2009 order where the trial court found Mr. Mayer in contempt. The second order being appealed here today is the September 30, 2009 order, the trial court denied without comment, without evidentiary hearing, and we believe the record indicates without review of any of the evidence. Can you clarify for me right up front, did the trial court find him indirect or direct? It says, according to the order, it's indirect criminal contempt. Indirect criminal. Indirect criminal. I don't think the record is clear on that, Your Honor, and the law seems to be clear in the sense that, and I would also point out that there is no argument by the is clearly a fine, and what distinguishes criminal from civil contempt is the ability to purge yourself from the contempt versus the inability to purge yourself and the potential for a fine in an amount in excess of $500 and the potential for jail time. But what I would say is in terms of what occurred in this case, Your Honor, is that back in June 16, 2006, Mr. Mayer was a partner in a limited liability company, or a co-member, if you will. He disassociated in accordance with Illinois law, the Limited Liability Company Act. On or about June 16, 2006, a lawsuit was filed on June 20, 2006, in Jackson County, and on June 30, 2006, the trial court entered a preliminary injunction after a hearing. We do not argue, the court issued a Rule 23 opinion sustaining the lower court's finding in the preliminary injunction, and we do not, we're not here to argue the propriety of that Rule 23 order. We're not here to argue the propriety of the preliminary injunction that was entered on June 30, 2006. Now, in order of the timeline, unless the court disagrees, I'd like to dive into the motion for rule to show cause and the contempt finding on March 20, 2009. First, the court directed the parties to, in their briefs, file a statement, if you will, on jurisdiction in terms of why this court has jurisdiction under Supreme Court Rule 304b-5. To begin with, just as an aside, the timing of it so that there's no misunderstanding of what occurred is the plaintiffs filed a motion to dismiss after the defendant's initial brief had already been filed, and this court ordered a statement by the parties on jurisdiction. Though the defendant already responded to the motion to dismiss, I point this out because the plaintiffs point out in the brief that the defendant, Mr. Mayor, weighed that argument, but because of the timing, we were not given an opportunity to raise it in our opening brief on the issue of the contempt, but we did so in the reply. And the issue raised by the plaintiffs in the motion and then in their brief is the issue that after March 20, 2009, a subsequent fee petition was filed and was heard, and even though a notice of appeal had been filed on the contempt order under 304b-5, the plaintiff's argument is that once the fee petition was filed, once a subsequent order was entered on that fee petition, it was the defendant's obligation to file a new notice of appeal. And we know here in Illinois that in a civil case, for example, in a final order, in a 304 order other than, you know, a finding where there's no just reason to delay enforcement of the appeal, we know that when a subsequent fee petition is filed under Supreme Court Rule 137 or some other reason that you would file a fee petition may be ordered by the Supreme Court, and the reason is that would in fact, we believe, would in fact require an appellant to refile a notice of appeal because it has the effect, that fee petition has the effect of revesting the trial court with jurisdiction, and once that occurs, you need to file your new notice of appeal. What distinguishes 304b-5 from the example that I just gave the court is that 304b-5 is a separate proceeding by Supreme Court rule. It is a proceeding within the proceeding, and the cases we cited, People v. Silverstein, Longo v. Globe, citing liquidation of Medicare HMO, those cases all reveal what I just said, which is a post-trial motion directed at the contempt order does not serve to extend. Counsel, maybe I can help you out. I think both sides have adequately addressed our concern in their briefs. Okay. We can read them. Okay. The procedural aspects of jurisdiction. Would you want to get to the substantive issues here and help us all out? That would be fine. In terms of the substantive issues on the rule-to-show clause and the finding of contempt, let me first start with the procedural errors that occurred in the trial court. First, we do cite in our brief the cases, and I won't go over those unless the court has specific questions about it, but when you have a criminal proceeding, the court is required to allow a jury trial. But more importantly, the court has to inform the defendant that they have a right to a jury trial. This court has seen plenty of appeals in criminal cases, I'm sure, and we know that there's a jury waiver form that usually accompanies such a waiver. In this instance, that did not occur. In this instance, Mr. Mayer did not receive his Miranda rights because this was a criminal proceeding. Mr. Mayer was not informed of his right not to have to testify against himself. None of that occurred in the lower court, and in fact, the cases we cite clearly, clearly indicate that that had to have occurred. I do want to just mention that in the plaintiff's brief, they cite a couple of cases, and the cases are just clearly distinguishable. They're in the briefs. I won't re-argue those. But clearly that this defendant was entitled, like any other criminal defendant, which this proceeding was, to a jury, informed he has a right to a jury, that he has to knowingly waive that jury, and that in addition to Miranda, his right to self-incrimination, he was not advised of the same. Is there some amount of fine that triggers the jury trial? That's correct, Your Honor. Under the Kickapoo case that we cite in our reply brief in response to the plaintiff's response brief, a Kickapoo indicated that that jurisdictional amount, if you will, it's $500, the potential for six months or more in prison. Well, this fine, and it says right in the order, the contempt order, the fine was greater than $500. It was $2,500, and as a result, it triggered Mr. Mayer's right to be advised that he had a right to a jury and the right to waive that jury. How did that amount come about? I'm sorry, Your Honor? How did that amount come about? You know, I don't see it in the statutory provisions under 304b-5, but this Kickapoo was a supremely- No, no. I mean, in this particular case, did Judge Kimmel, that's what he just came up with? Was it argued about how much, what the propriety of the amount of fine would be? It does not appear to, it's not in the record, and I'm certainly familiar with the record. I was not the trial attorney at the time, but what I would say is that it appeared to be, and I don't mean this in a negative, just arbitrary, that this is the appropriate fine for what you have done. So there's nothing in the record where Judge Kimmel weighed any evidence as to why the $2,500 is appropriate, but it should be noted the fine was paid. And, you know, in addition, though, to what is in the record, in addition to the procedural errors that we think the trial court engaged in was the weighing of the evidence. And in this instance, there just, you know, again, lots of lawyers have probably argued before you, there is no evidence that Mr. Mayer violated the preliminary injunction order. There's none. There is evidence, but not that relates to the preliminary injunction order of June 30, 2009. So let me be specific. There was a witness who testified. This witness was an employee of the plaintiffs at the time, and that witness testified, and I'm paraphrasing, that I, the witness who works for the plaintiff, I, the witness, redirected this website, which was the basis of the motion for rule to show clause. I redirected my employee's website to a different place, and that Mr. Mayer had nothing to do with it. Did he have any relationship with the defendant, with Mayer? No. No connection, no relationship at all? No business relationship, no family relationship. I think that... Any personal, any knowledge of each other? I think he had knowledge of each other, but that would be, I can say this, and I say that standing here before the pulpit, but the evidence in the record, there was no relationship. So you're saying that there's absolutely no way that this could constitute circumstantial evidence, that your client had something to do with it? That's absolutely correct, Your Honor. In fact... There's no circumstances we can pick out of the record that would connect them in any way? That's correct. There would be no circumstances. In fact, my client never even talked to this Mike Robinson to determine how it was done or why it was done, only that he, the record reveals that he talked to Mr. Robinson's wife when he found out, hey, you know, this website's being redirected, what, you know, basically what's up with it. I think you argued that he did it possibly to help sell something or for business opportunity later on with your client? Well, there's... To show him that he could do it and he'd be valuable? Well, I would say this with all due respect, that the record is absent of any of that type of evidence, it's just there's none. And in terms of, it would just be on the trial court's heartbeat conjecture. The court never found that. The court never said this witness has testimony. The court found as a basis for that, that Mr. Mayer intentionally redirected the website. But the plaintiff's, I would almost say, chief witness who was operating, you know, working within this computer company to, you know, their IT guy, if you will, their chief witness as it relates to the redirection issue testified, I did it. And so that's number one. But if you read the actual order, now I'm going to make an argument that's in the briefs, but that number one, we argue not only did this man testify the way he did so there can be no contempt finding aside from the procedural issues, but because the court doesn't even have to get there because I think the procedural issues takes care of the order itself on the contempt. But even if the court believes that, no, it doesn't. First, we have Mr. Robbins' testimony that is non-testimony to me. And second, we have the issue of the logo or trademark. And the logo or trademark is never mentioned in any of the pleadings of the plaintiffs that filed in the trial court. And the logo, it's not even clear that they, you know, have an interest in it. But more importantly, forgetting whether they have an interest, forgetting whether it's mentioned in the pleadings, it's not mentioned in the preliminary injunction order. The order says give back all of the stuff, number one, and don't contact our customers, number two, paraphrasing, of course. And therefore, I don't think that you can extend the terms of the injunction. We cite, of course, cases that say that. You have to, if you're going to enjoin someone from taking, from doing certain things, it is necessary that you inform them specifically of what they're being enjoined of. I think the order is clear. There's no doubt it's clear. But it doesn't include this logo. And then we go on in the briefs to point out that the logo itself was trademarked two years after the preliminary injunction order was entered. Two years. And by plaintiffs, which I think is revealing by itself, but I'll let the court draw conclusions on what that means, but what interest did they have at the time the preliminary injunction order was entered? And second, when that preliminary injunction order was entered, there's no mention of any logo at all. And there's no mention that he can't use it or he can't do anything with it. So I'll dispense with that for the moment. Why was the preliminary injunction allowed to stay in effect for so long a time? Well, you know, that's a very good question. I can answer that as follows. It's not by lack of effort by the defendants. In the brief, in the statement of facts on the preliminary injunction brief, the defendant points out that they tried to docket it so that they could get it before the judge on at least two occasions. One occasion, the parties actually had an agreement to have it heard in March, I believe, of 2008. And then again, the court just did not hear it. And then finally, they were able to get it before the court on September 30, 2009. And I think it points to a big question here under 307, the Supreme Court Rule 307. The defendant has a right to bring the appeal on a motion to dissolve. And there are cases that we've cited in the brief that talk about circumstances that arise allowing that, you know, where it's just no longer necessary to have the injunction. Now, it's a little unusual because this case has been going on for four years. It's interlocutory. The court has heard it under Rule 23 already. But the motion to dissolve goes to a completely different issue. And that issue is exactly, in some ways, it just jumps out at you that you have an injunction against competition because that's paragraph A of the preliminary injunction order. And that competition, that injunction was entered without a covenant not to compete, without a written contract. And I would also say that in the pleadings I have reviewed, the actual complaint, there's no claim for a violation of a restrictive covenant. And these are the original pleadings, the original complaint, the Second Amendment complaint, and so on. But more importantly, now that we stand before the court, and I usually don't bring props to a appellate court argument, but this is the Third Amendment complaint. It's part of the record in this proceedings. And there is nowhere in the Third Amendment complaint where they seek any relief that there's no count for preliminary injunction, there's no count for permanent injunction, there's no relief requested for violation of the Illinois Trade Secrets Act, there's no request for relief under, as I said, any covenant not to compete. So we point out in our brief that we believe that the plaintiffs have abandoned these claims. Now, how are the plaintiffs going to prove the claims for preliminary injunction that this court, that the trial court entered on June 30, 2006, if they're not in the brief, in the complaint? How? The prayer for relief, I won't recite what it says, but I will tell you on my word that the prayer does not request any of this relief. It does request an accounting, which is equitable, and it does request a sort of run-of-the-mill equitable relief that we want our stuff returned. It doesn't say specifically what it is, but in the complaint they mention customer lists, but they never, ever say that you took our customer lists, and they never, ever say that those are confidential and they're trade secrets. Clearly, this is true. So we're left with a complaint that really these plaintiffs can get money damages, and that's what they seek. They are claims under the Illinois Trade Secrets Act for breach of fiduciary duty, and as I said, you can take a look at the complaint and you will see what I am saying. But as I mentioned, you have our appeal on this issue, on the restraining order, on the preliminary injunction is an equitable argument before this court that it's been four years, there's no trade secrets violation, it has not been alleged, there's no covenant not to compete, but even if there was, he's been restrained for four years. So thank you unless you have any further questions. Let me ask this question here about the jurisdictional issue. The trial court's order is pretty clear. It says the plaintiff shall be awarded reasonable attorney's fees and court costs with the amount to be determined at a later date. So why is this final? I will tell you, because under 304b-5, when that, I'm going to give the court just an analogy real quickly. If the court, the trial court, imprisoned my client, which the court could have done, if they imprisoned my client, the reason why 304b-5, and this is the logic behind it, allows an appeal aside from anything else going on in the case is because of that fact, that criminal contempt can result in imprisonment. We don't want Mr. Muir or any other criminal contempt defendant sitting in jail without the right to appeal while the underlying case goes on. That's not the facts of this case. Well, it is similar to the facts of this case because that particular fee order was not entered as final until April, May, June, July, August, September for about six months later. So while Mr. Muir potentially again could, and it's not the facts of this case, but that's why the 304b-5 says, and the Longo case, the Silverstein case, and all those cases say that when you are found to be guilty of criminal contempt, your appeal rights are vested. They start to commence then. And that is the logic behind that rule and under the cases that we cited. Thank you, Counselor. We have an opportunity for rebuttal. Thank you. Mr. Dahlin. May it please the Court. Counsel, my name is Michael Dahlin, and I represent the plaintiffs in this case, Plaintiff Consulting Solutions and Network Consulting Solutions. As a preliminary matter, Judge, let me answer a couple of questions you asked of the opposing counsel. $2,500 was just decided by the judge. No party recommended that an amount be placed. I know in one of your briefs or one of your replies or whatever, you mentioned that while not conceding that there was a problem, you said that we could just reduce it down to $500. Yeah, and let me explain. I'll tie that in with my argument under Rule 366. First of all, Judge, I know you mentioned, okay, we know what jurisdiction is. It's in the briefs. Judge Waxman said, well, what about this? I want to spend a couple of minutes on it because I have this interest in appellate procedure, and under Rule 304b-5, I can represent for this Court this is a case of first impression. It hasn't been decided, as I stand here, as of a few days ago. The question is, what happened? We'll talk about the merits, about the contempt finding. In a moment, I'll address that, but I don't think he even gets it because I don't think there's any jurisdiction. There's no doubt that the Court found Mr. Mayer in contempt until March 20, 2009, found it's too prompt. I find you in contempt, and then what's 304b-5 says? Imposition of a monetary sanction. And the monetary sanction is you're going to pay the clerk of the court $2,500, plus I'm awarding attorney's fees to be determined at a later date. And as Judge Waxman correctly pointed out, this is no separate petition for fees under 137. It's right in the order. That analogy falls flat. So the judge says, I'm going to award attorney's fees. Well, we filed a motion within 30 days. No magic numbers there. We filed a motion on April 15, asking for attorney's fees and a certain amount of money. Well, lo and behold, after we filed a motion, there was – Did you have 30 days to file the motion? No, you didn't. He didn't give us 30 days. I always like to get it in – Right, but I mean there was no – Yeah, we could have filed it in 90 days. We could have filed it six months later. It doesn't really matter. So we filed a motion for attorney's fees. After the motion for attorney's fees is filed, what does Mr. Mayer do? He appeals it. He doesn't wait for the award of attorney's fees. So what we have now is on appeal a finding of contempt, a sanction of $2,500, and left hanging out there is the attorney's fees that was never decided. We all know we don't need a lesson on Rule 304A. Rule 304B was decided or enacted to avoid the 304A findings, that there's no just reason to delay enforcement. But you've got to have the complete order entered. You've got to have the fees. You've got to have the sanctions. So if a client sits in jail for the – you said you could wait three months to file it. If a client sits in jail for three months waiting for you to do it? No, no, no. There's all kinds of things you could do. What I would do from a unique procedural standpoint, I'd ask for a 304A finding, although it's under 304B, because why? We have a bifurcated award of fees, $2,500, and we have the attorney's fees. But I don't think we have to go down that path. That's just pure hypothetical. Let's look at the facts we've got here. He should have waited until the fees got entered. And if he didn't want to wait, he should have filed a motion for immediate hearing on the award of fees. Nothing was done. He appealed it. All I'm suggesting to the court is under the case law, it's real easy. This is not rocket science. These cases have said where a court finds somebody in contempt but reserves the amount of the sanctions for a later date, the order is not appealed. And are there cases that establish attorney fees as sanctions? Yes. They're in the brief. But what's unique again, and I want to be up front with the court, what's unique about this is this is the first one under 304B-5 where you have a double monetary sanction. A fine, attorney's fees. You have two. This is a little bit different than what we have in Kentucky. Would it have been permissible to say since your position that attorney fees are a sanction, would it be permissible for Judge Kimball to say zero fine and $500 attorney fees? Sure. Would that be a sanction then? Yeah. He could forget about ordering any fine. And we didn't have to request a fine yet. The judge wanted a fine anyway. I mean, as a sanctioned bargain, I find Mr. Mayer in contempt, and I fine him $0 that I'm ordering him to pay you $500 attorney fees. Yeah. That would be appropriate. Sure. Judge, I've been in your career. In the old days, we had that. If you didn't want to produce something in discovery, you said, I'm not producing it. It's attorney-client privilege. I'm not producing it. You couldn't get it up on appeal, right, because an order of contempt was not appealable. So what did everybody do? I'm going to fine you $25 so you can take it up on appeal. So you have to have that fine. So it could have been $25. You could have awarded it. You could have awarded it. We didn't get what we wanted at all. But the point is you've got to have the monetary fine to make it finally appealable. All I'm saying is he didn't do it. He didn't wait. And what's more egregious in this case, and I realize that counsel is attorney number five. Okay. You talk about why is this going on so far. We've been through five sets of law firms on May 2nd. There are more attorneys in there. He changes attorneys more than Brett Favre changes his mind on retirement. That's an issue as far as delay goes. But what could have been done in this case? You could have filed a motion under what? 303A2. If you recall that allows a party, oh, I filed a pre-mature notice of appeal. What do I do? You file after the attorney's fees was entered. What I would have done, real easy. I would just file a motion to amend the notice of appeal, but in an appellate court. You would have granted it and we would have been under it. They didn't do it. I'm saying if you're going to play the game, play by the rules. There's no jurisdiction. We don't have to consider the contemporary. But since we did discuss it, I'd like to address some of the issues that were raised in the contemporary. I suggest that I'm not going to argue that $2,500 is appropriate, although it's no jury. What bothers me is his attorney never requested a jury demand. Never requested a jury demand. And now they come up here and say, well, gee, he should have been afforded a right to a jury. Okay. He should have been afforded a right to a jury. Does that mean we remand him back for another hearing? No. What we cite is a city of Rockford case that says what? The right to a jury is based upon the amount of fine or the imposition of a penalty. If you're going to impose a penalty of more than $500, give him a jury trial. If it's $500 or less. A right to a jury trial. Right. A right to a jury trial. Right. And so what I'm suggesting is we don't need to go back and do it again. What I'm saying is I have no objection, and it may be self-junk, or what the fine is. Lower it to $500. Lower it to $300. That will resolve the issue about we didn't have a right to a jury. Presumably, Judge Kimball thought $2,500 was the appropriate sanction. I would think so. So how is it our business to tell him that that's not the appropriate sanction? Well, it's your business in this sentence. I mean, we could make it a lot easier for everybody by just saying reduce that to $500. But, I mean, still, isn't that the trial court's function to impose what he or she thinks? It certainly is. And, Judge, I think you have to balance the equities here. $2,500, I think, was well within the discretion of Judge Kimball. There's no doubt about it. But on the other hand, if we're going to get into a contest over, geez, we're going to remand it back for another trial and hearing on this, I'm saying, why? Just lower it to $500. I don't think Judge Kimball's going to sign this case anymore anyway. So I don't think it's going to affect anything. But I'm just saying as a practical solution, I suggest to the court under 366 to avoid another trial. So they can go in and say, geez, we want a jury trial. We'll do a jury trial. We've got this case a separate trial, jury trial. We could just send this thing back six months ago and say let's just have a hearing on the third minute complaint and forget about all this stuff. Yeah. That would have been a practical way to get the thing resolved. The idea of the continuance, I'm not going to waste time on that. They had attorneys there. Their lead attorney was in Arizona. Geez, what they neglected to tell everybody, their lead attorney wasn't even licensed in Illinois. The other attorney who was there for the hearing of the representative mayor was the only attorney licensed in Illinois. His lead attorney didn't file a motion to throw out Beechett. Let's talk about, if we can then, move on to the merits of contempt. And I mention the merits of the contempt because I believe after I discuss the facts here, that will negate any further discussion, need for further discussion regarding the denial of the motion to dissolve the preliminary injunction. As this court knows, I believe it was Judge Walsh, Judge Spomer, Judge McGlynn. I think Judge Watson, you replaced Judge McGlynn. Two out of three panel members, you're familiar with the preliminary injunction that was entered previously. What did it say? Don't contact, don't solicit, don't do any work for NCS clients. The mayor's got his own mayor network going on and has an ongoing business in the Carbondale area. Fine. Just don't mess with NCS clients. The other point was return all property, equipment, software. Wasn't done. The other one was return passwords and access codes. So those are things that he was supposed to have done, which he didn't do. The court filed a palliative contempt order when we filed a motion for contempt. What precipitated the petition for a rule to show a clause on this? Well, there's a billboard in Marion with Mr. Mayer's picture on it with the logo of NCS on there. And instead of NCS, it has Mayor Networks. That precipitated the petition along with this redirection, which I'll mention in a minute. The logo, by the way, is a service mark, not a trademark, a service mark. Trademarks deal with two years, you know, and abandonment and disgust. It's a service mark. It's registered by NCS. They own it. The trial court had the opportunity to compare the logo that Mayer was using with NCS, and they're almost identical. It's in the record. You can look at it. They're identical. Mr. Mayer admitted that he was using it to solicit clients. In this particular case, there's no doubt that the logo was NCS property, and he wasn't allowed to use it. That's what the preliminary injunction referred to. What I find interesting is on the stand, you'll read the transcript. When asked about that, he said, well, I don't think the court's preliminary injunction order was worded properly. It was too broad. You should have brought in the FBI or slapped them with another lawsuit. That's the attitude that we had when this stuff wasn't being followed. Another point at the contempt hearing on violation of the preliminary injunction was this use of passwords or administrative codes. To this day, to this day, he never offered to return the passwords or administrative codes. Now, I'm not a computer geek, but we all know when you go online or something, we all have to have our little password to get on when you're going to do something. Same with servicing clients. They have administrative codes, passcodes. They had to hire an IT expert to come in, gain access to their own computers, because Mr. Mayer bluffed with that information, and had to reassign codes and passwords. At the September contempt hearing, he admitted that he didn't return them. He felt that I asked him, well, why didn't you return them? We wouldn't be here today if you would have left. Started Mayer Networks and just went on his merry way. But no, you've got to keep couching these people. So he said, well, it was unnecessary. Grogan Jackson was a silent partner. I was the person in charge. So that's why he never felt that he needed to do it. So that's two. I think the court was, that was proper in finding him in contempt for not returning that information. That is in the preliminary injunctions. It's clear as day. The logo, the word logo may not be mentioned in the preliminary injunction. Preliminary injunction says you don't use your property rights. You don't use your property equipment. A logo is a property right of our company. And they could have argued that if they wanted to at the trial court level. Let's talk a little bit about this redirection by Mayer, allegedly by Mr. Robinson. I think the redirection is this. You type in NCS or Mr. Adnan, their assumed name. And you go online and type it in. It's like typing in Sears. I would type in Sears and Carbondale. Guess where it's redirected to? It's redirected to Walmart. In this case, you type in NCS, their assumed name. Guess where it went to? It went to Mayer Networks. They had a program. So whenever our clients or anybody was interested in our business, typed in our business. It went to Mayer Networks. Now is that right? Okay, let's talk about that. Here's Mayer's position, if I understand it Bruce right, in the argument of counsel. Hey man, I didn't do it. It was all Mike Robinson. He's the one. He did it. So we asked him. After hearing him, I asked him. I said, do you know Mike Robinson? No, don't know him. Well, it's interesting. Take a look, Judge, at the prior Rule 23 order. That's who Mike Robinson is. Not only did he work with NCS like Mayer did. He testified at the preliminary injunction hearing a few years ago. Now, he didn't know who Mike Robinson was from Adam. But read the transcript. Well, Mike did this and I told Mike that. Didn't know Michael Robinson, but it was Mike to him. What I thought was interesting is this, and there's a question mark. It's unrefuted. Mike Robinson admitted it and therefore the court, it was against the weight of the evidence to find him. Well, the court doesn't have to be blind to this charade. What happens is we file a petition for the rule to show cause. And guess what? He gets on the phone. Mayer gets on the phone. Robinson. And guess what? And all of a sudden this redirection magically stops. But they didn't know each other. Just coincidence. You know, when asked if he knew the redirection was occurring, and don't you think that you should do something about that? Are you taking the client? No. Well, kudos for me. Kudos for me. So what about Robinson? Let's talk a little bit about Michael Robinson. Contrary to counsel's representation, I disagree. He was not an employee at the time of this hearing with NCS. That's just simply not true. He said, well, I asked him, why did you do this? You know, if you're redirecting, that's some serious stuff. Why did you do it? Well, I did it as a favor. Okay, now, Mayer doesn't know Robinson, but he's going to do Robinson a favor. He's going to do Mayer a favor. Okay, well, that's fine. What do you mean by a favor? I wanted to market Mr. Adman. Well, Mr. Adman belongs to NCS, but he's going to market this to Mr. Mayer. Was Mayer aware that you were doing it? No. No, Mayer wasn't aware I was doing it at all. So I'm thinking, well, if he wasn't aware that you were doing it, why in the heck, when the petition for a rule of show cause was filed, why did Mayer call Robinson? They didn't know each other. And I asked him, I said, well, Robinson asked about stopping it. He said, yeah, I just decided, I tried to market it. He's trying to market this, never talks to Mayer. He's just doing this as a favor. Mayer is unaware that he's doing it. Robinson was called by Mayer at the hearing? No, no, no, no, no. Oh, I hope. That's correct. I think he was. Even though he didn't know him? Right, right. It's your position that he had to know him. Otherwise, how could he? Yeah, well, I think it was said just a few minutes ago, there's circumstantial evidence. Judge Kimmel has a right to believe or not believe this testimony. Now, here's what I thought was real interesting. Think about this. Robinson's doing this as a favor, never tells Mayer that he's doing this as a favor. Mayer doesn't know Robinson. And then when a petition for rule of show of laws is filed, automatically it stops. The redirection stops. We did have an IT expert testify to all this. How did he know that the petition of rule of show of laws was filed? It's just a coincidence that it stops? Well, he knew because they were in on it together. That's a court's discretion. We pay a lot of lip service as appellate practitioners to standard of review. In the other case before us, I know there was a couple questions about standard of review. I'm guilty of it. A standard of review, abuse of discretion. They know. You just throw it out there. If it ain't right, it ain't right, and that's the way it is. This brings home what is valuable about an abuse of discretion standard. This sets forth where a judge did not abuse his discretion and say, I'm not buying that story. Counsel, can I move on to the other case? Sir. Is there any significance, according to opposing counsel, there's no request for a permanent injunction? Is there any significance to that? If there isn't a request for a permanent injunction, why isn't there one in your third amendment complaint? There should be one in the third amendment complaint. If there isn't, there is a request for equitable relief. And I guess you could have put specifically a permanent injunction rather than just a request for equitable relief on that. But that's what's being asked for in this case when it goes to trial, that it's permanently enjoined from using the information that he got from his appointment with NCS. There's some question, too, about the length of the four years that this has gone on. All I can tell you, Judge, is I wish this litigation would have been over in a year. I wish it would have been over shortly after that Rule 23 order came out. But it's set for trial in November. We've had difficulty with – it's like – You can finish your sentence. Okay. I find it interesting that you argue about the delay, but you're the one that causes the delay. You argue that, geez, I should be allowed to compete now because they don't need the passwords because I refused to give them passwords, and they had to go out and get new passwords. Therefore, it's okay. You don't reward bad behavior. Thank you, Your Honor. We have rebuttal. Thank you again. Let me start by saying – trying to stick to the record in terms of the argument. There's a lot of things that I believe counsel argued that are just not in the record. For example, the Brett Favre comment, five years. It's irrelevant. It's superfluous. It doesn't matter. But one other thing I have to point out is you'll see in the record that Mr. Robinson was called by the plaintiffs. And it seems to me – again, I'm making argument before the court. Now, it seems to me that it was a little awkward in trial. I'm just trying to read into the record because I was not there. But when you read into the record, it seems as if Mr. Robinson was not the witness that they thought he might be. I promised I wouldn't do this in my initial argument, but I think it's important to stick to the record, what the record actually shows. Mr. Robinson and Mr. Muir never spoke. It was Mrs. Robinson – I'm sure there's a joke there – where Mr. Muir spoke to Mrs. Robinson, and it's right in the record at the transcript, page 76. Plastics. Like that? No. I want to be in on a good joke. It's a good joke. It says, Let me be blunt. Did you have anything – and this is the questioning, Mr. Plaintiff's counsel questioning of Mr. Robinson. Let me be blunt. Did you have anything to do with the redirection of Mr. Admin to Muir's networks? Yes, I did. And would you tell the court what your involvement was? I own MrAdmin.com. Okay, I didn't make myself clear. Tell the court how the redirection was accomplished. The redirection was accomplished by changing the default page, the login pages, anything else that was there. Only the default page went. So to make sure I understand this, Mr. Muir did not know that you had been redirecting to his site. Answer, when he found out, he informed me that he saw it. I did not tell him that I had done it, and then I went out a couple of days later and shut it down. And when did he inform you that he saw it? He placed a phone call to my wife. I do not recall the date. So to stand before this court and to argue that, in fact, there was evidence in the record that somehow Mr. Muir knew Mr. Robinson or that he saw them at a hearing and now they're best of friends is not only disingenuous, but I think more importantly, it's not in the record. And that's what we're here. We're here to determine what's in the record and determine how the law applies to those facts. And then you say, well, he's a bad guy. You know, bad guys get what they deserve. But how about the standard beyond a reasonable doubt? You have their key witness saying that he didn't do it, and there's no, you know, the lower court did not weigh whether, even with this testimony, it was beyond a reasonable doubt. And are we going to hold a defendant in criminal contempt because of what, on this testimony? In terms of the preliminary injunction and delays and things like that, we're here on a 307 petition. The court, as I mentioned, clearly this defendant is allowed to at least petition this court for this type of relief on a denial of a motion for failure to dissolve the preliminary injunction. And I don't think that, you know, we should read into the record that there's any delay or any equitable reason not to do it. We started this process two years ago in the lower court to try to get a motion to dissolve Byrd, and we're here now to have it. Is the case set for trial? The case is set for trial, and although this is outside the record, it remains to be seen whether it will be ready for trial in November. But it is set for trial. Bobby, we, and I'll speak for the other two judges here, we work as quickly as we can, you know, but there are other cases that may take a little long before we get a decision down. And I'm saying, you know, you're going to possibly, if it's in November, have your day in court fairly close to when we enter a ruling on the case. And that is true, and we recognize that. But, you know, nonetheless, we think it's an important issue for the court to address. And just very quickly on the issue of jurisdiction, it is not a case of first impression. The Longwood Court clearly says that no matter what other matters are before the court, when the punishment is ordered, the fine or the jail time, it triggers your 304 plan. Do you believe, as opposing counsel, that attorney fees are sanctions in contempt proceedings? That's, I don't believe so. I believe that these were not sanctions. These were based on a specific fee petition saying you caused this, we want our money. And Longwood addressed that. Longwood said, I don't care what's going on in the case. When you are fined. So the definition of sanctions does not include attorney fees? I would argue to this court that even sanctions for attorney's fees are not, are yes, bifurcated proceedings, but do not affect the jurisdiction of this court, because it can't. As the court pointed out, Your Honor, the guy can rot in jail. The fact that they had a hearing on the fee petition six months later doesn't mean it couldn't have taken a year. And for us to have, you know. I thought that's what you pointed out. I was just kind of repeating. Right. And what I would say also is that it's just, to have to go and make a 304A finding when you have 304B, 5 would just turn it on its head. And I would lastly just say that in terms of the prayer for relief, I would just urge the court to look at the prayer for relief. Like there's no injunctive relief sought. Thank you. Thank you, counsel. We appreciate your arguments. The court will take the matter under advisement and render its decision. We will stand at recess.